ALFRED BURTON *et al. vs.* ERNEST LEFEBVRE *et al.*

MAY 9, 1947.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CONDON, J.   This is a petition for *certiorari* to be directed to the town council of West Warwick, in this state, sitting as a licensing board, under general laws 1938, chapter 164, §5, as amended by public laws 1940, chap. 814, sec. 8, and to the town clerk as the clerk of such board. Unless otherwise stated, the respondents will be referred to as the board. *Certiorari* was duly issued commanding the board to send and certify to this court the records, and all things pertaining thereto, of a certain meeting of the board held on February 26, 1947 at which it suspended the class B alcoholic beverage license of each of these petitioners.

Petitioners allege in their petition, *inter alia*, that they are lawful holders of such licenses in the town of West Warwick; that the board, through the chief of police, on the day of that meeting ordered them to appear thereat without further informing them as to the purpose of their presence; that at such meeting the chief of police charged each petitioner with a specific violation of law constituting a breach of a condition of his license; and that the board, without receiving evidence in support of such charge and without granting to

each petitioner a fair and impartial hearing at which he could defend himself against such charge, ordered the license of each petitioner suspended for a period of sixteen days, effective March 1, 1947, at 1 a. m. Therefore petitioners pray that such orders, being illegal, be quashed by this court, and that in the meantime, pending a hearing on their petition, each order of suspension be stayed. Contemporaneous with the filing of the petition and issuance of citation to the respondents we ordered a stay, as prayed for.

Respondents did not file an answer to the petition, nor did they object to the petitioners having joined their causes in one petition. Accordingly, the allegations set out in the petition are taken as undisputed, and we may consider the petition as though each petitioner had filed a separate petition for the writ.

At the hearing before us, counsel for the respondents frankly conceded that the meeting of the board on February 26, 1947 did not constitute a legal hearing. However, they contended that the board was not required by law to grant such a hearing before revoking a license and *a fortiori* none was required before ordering a mere suspension, as in the case at bar. For this contention they relied upon G. L. 1938, chap. 163, §10, and §36 of the rules and regulations made and promulgated, under the authority of G. L. 1938, chap. 164, §5, by the state liquor control administrator. They further argued that the board, in deciding to order such suspensions, was not exercising judicial or *quasi* judicial power, but solely administrative power; that such suspensions were reasonable and final; and, therefore, that *certiorari* did not lie to review them. Those contentions are so closely related to each other that they may be deemed to be basically the same and may, therefore, be treated together.

In pressing those contentions, counsel for respondents remind us that we are concerned here with licenses to sell alcoholic beverages and that such licenses are not property. They also urge that it has always been recognized in this state and elsewhere that licensing boards are vested with a

broad discretion in administering such licenses, and they call to our attention a recent decision of this court which gave effect to those principles. *Casala* v. *Dio*, 65 R. I. 96. We are not unmindful of the general principles referred to in that case, but we must point out that in that very case we stated that those principles had a limited application.

In the *Casala* case a licensee's application for a renewal of his license for another term was denied by the local board. He contended before us that he had a right, in the nature of a property right, to a license and that he was, therefore, entitled to a hearing by the board before it denied his application. That contention was rejected by this court in the circumstances of the case then before us but we were careful to say that, "The denial of such an application for a license is not to be confused with the revocation of a license already lawfully granted, in which case the statute provides for a hearing." The inference to be drawn from that statement is that the board is not vested with the same broad discretion in revoking a license as in denying an application for one.

Under the licensing statute that was in effect in this state prior to the adoption of the eighteenth amendment to the constitution of the United States prohibiting the manufacture and sale of intoxicating liquors, the grant or denial by a local licensing board of an application for a license rested in the board's discretion and its decision was final. *Roach* v. *Town Council of East Providence*, 35 R. I. 363; *Dexter* v. *Town Council of Cumberland*, 17 R. I. 222. After the repeal of that amendment and upon the resumption of lawful traffic in such liquors in this state under P. L. 1933, chap. 2013, the legislature again vested local boards with the discretion to grant or deny an application for a license without a hearing; but its decision was no longer final, as sec. 14 of that chapter authorized the applicant to appeal to the alcoholic beverage commission. *Moretti* v. *Division of Intoxicating Beverages*, 62 R. I. 281. The commission's decision on such appeal, however, was, under that section, expressly made final on questions of fact. *Marsh* v. *Alcoholic Beverage Comm.*, 54 R.

I. 57. On questions of law its decision is reviewable by this court on *certiorari,* as were decisions of the local board under the former statute, and as they still are under the present statute. *Moretti* v. *Division of Intoxicating Beverages, supra,* and *Baginski* v. *Alcoholic Beverage Comm.,* 62 R. I. 176.

With the revision of the general laws in 1938, those sections of chap. 2013 of public laws 1933 with which we are here concerned became sections of chapters 163 and 164 of the general laws. It is, therefore, to those chapters, and more particularly to §10, chap. 163 and §§5 and 9, chap. 164, as amended, that we must look to determine the character and extent of the power of the board in the case at bar. Whether a license to sell alcoholic beverages is a property right or a mere privilege is of no consequence if the legislature, by express enactment, has granted certain rights to the holder of such a license and limited the power of local licensing boards to suspend or revoke it only for cause.

That there is a vital difference in denying an application for a license and in revoking one already lawfully issued is not difficult to see. Under the former law there was no question but that *certiorari* would lie to review action of the latter kind in order that this court might determine whether the order of revocation was for cause according to law. *Deignan* v. *Board of License Comm'rs.,* 16 R. I. 727; *Board of License Comm'rs.* v. *O'Connor,* 17 R. I. 40. At present §10, chap. 163, G. L. 1938, expressly provides that, before the local board shall revoke a license, the licensee may be summoned before the board when he and the witnesses for and against him may be heard. In the face of this provision we are at a loss to see where there is any merit in respondents' contention that the board had authority to revoke a license without formal hearing under chap. 163, §10. They have probably been misled by the legislature's use of the words "may be summoned" into believing that the hearing prescribed therein is optional with the board. Such, in our opinion, is not the reasonable import of those words.

We think that there is an option in the board but it is an option to bring or not to bring proceedings to revoke the licensee's license. If the option to bring proceedings is exercised the statute requires the board to grant a hearing at which witnesses for and against the licensee may be heard. Substantially the same language that is in §10 was in the former statute prior to national prohibition. That statute was construed by this court as guaranteeing a legal hearing to the licensee and was further construed as requiring such a hearing on sworn testimony. *Deignan* v. *Board of License Comm'rs.* and *Board of License Comm'rs.* v. *O'Connor, supra.* In the light of such construction of the former statute we cannot assume that, in enacting §10, the legislature intended to withdraw such rights from the licensee and to vest in the board the power to revoke his license in its discretion. We are therefore of the opinion, as stated in *Casala* v. *Dio, supra,* that in the case of revocation of a license, "the statute provides for a hearing."

However, respondents further contend that, although such may be the requirement in the case of a revocation, there is no such requirement in the case of a mere suspension. In support of that contention they point to the fact that nowhere in §10 is there any reference to a suspension, thus indicating that the legislature did not intend that there should be a hearing prior to a suspension. And they further argue that, if the legislature intended that a licensee should have a hearing prior to a suspension of his license, it would have provided an appeal from such an order of suspension, as it did, by G. L. 1938, chap. 164, §9, from an order of revocation. On the other hand, petitioners claim that their right to a hearing on the charges preferred against them by the local board is impliedly provided by G. L. 1938, chap. 164, §5, and that the fact that §9 does not provide for a right of appeal from an order of suspension based on such charges in no way detracts from the wholly different right provided by §5.

There is merit in the petitioners' contentions. In our opinion §5 implies that a hearing must be granted to a licensee before he can be found guilty of charges that could or would result in his being deprived of the benefit of his lawfully issued license. That section provides, in part, as follows: "Every license shall be subject to revocation or suspension by the board, body or official issuing the same . . . for breach by the holder thereof of the conditions on which it was issued or for violation by the holder thereof of any rule or regulation applicable thereto or for breach of any provisions of this title." That language makes it clear that a license is not held at the pleasure of the local board or subject to its absolute discretion, but that it can be neither suspended nor revoked except for cause. In other words, the power here granted to the board over a license lawfully issued is not purely administrative, but is judicial or *quasi* judicial. In the exercise of such power the board is bound to grant the licensee a legal hearing on the charges alleged against him, if he seasonably demands such hearing.

Under statutes conferring similar power on other administrative boards or tribunals this court has held that a power to act "for cause" means to act in a judicial capacity and not in a mere ministerial capacity. *Narragansett Racing Ass'n, Inc.* v. *Kiernan*, 59 R. I. 79. And in *Girouard* v. *Board of Police Comm'rs.*, 52 R. I. 47, we held that it was immaterial that the statute contained no explicit provision requiring a statement of charges, notice and a hearing, as such procedure was implied. In *Norton* v. *Adams*, 24 R. I. 97, 100, it was stated that the action of the council must be justifiable under the law. "This can only appear", the court said, "by facts produced at a hearing". And in an earlier case this court quashed the lower tribunal's action where it had not given to the accused notice of the hearing at which it took such action, even though the accused had received notice of the taking of testimony against him by a committee of the tribunal appointed for that purpose, because a hearing without such notice, the court held, was not in compliance with the

statute authorizing the tribunal to take action against the accused. *Maroney* v. *City Council of Pawtucket*, 19 R. I. 3.

While none of those cases involved a liquor license we see no reason why they should not be considered as authority for holding that a legal hearing is required under the language of §5. Although a lawfully issued liquor license may not be property in the strict legal sense, it has some of the aspects of a property right, and it is reasonable to suppose that the legislature intended that a holder of such a license should have protection from arbitrary interference therewith by the local licensing board. When the legislature enacted §5, it must be presumed that it had knowledge of this court's earlier decisions above cited, and, therefore, that it intended that a licensee should not be deprived by the board of the benefit of his license except after cause shown at a legal hearing before the board.

We are of the further opinion that its failure to provide in G. L. 1938, chap. 164, §9, for an appeal from an order of suspension has no bearing on this question. It was quite consistent for the legislature to provide such an appeal in case of revocation and to omit to do so in case of a suspension. There is a reason for treating the two cases differently. In the nature of things the power of suspension, if properly used, would normally result in an order of suspension of the license for a brief period on account of minor infractions of the law or of other conditions of the license. Ordinarily such action would not be contested by the licensee, who for practical reasons would not demand a hearing, and so the board's action in such case would be accepted as final.

However, in a case where the licensee contested the charges against him and demanded a hearing, no order of suspension could be made, at any rate by the local board, because, if it found the charges proved, it would be its duty, under G. L. 1938, chap. 163, §10, to revoke the licensee's license. Thus, by resisting a suspension of his license and demanding a hearing by the board, the licensee runs the risk of the revocation of his license. But from such an order he may appeal

to the liquor control administrator. Under this construction of the local board's power to suspend a license there can never be an order of suspension after a hearing by the local board. Hence there is no room for an appeal, and the legislature quite properly provided none.

It is contended, however, that such a construction is not consistent with the rule prescribed in P. L. 1933, chap. 2013, sec. 81, now G. L. 1938, chap. 175, §1, in that it favors the licensee and may impede the enforcement of the law, especially as it affects the public health, morals and safety, with which matters of local police the town council, sitting as a licensing body, is the most competent to deal. Such a contention is quite without merit. In fact, under our construction, the declared purpose of the statute will be given effect with justice to the licensee and without any favor to him.

When he is charged with a violation of the law and is informed that his license is to be suspended because of such violation, he may accept the suspension or demand a hearing, but if, after hearing, he is found guilty, his license will not be suspended but will be *revoked*. Should he then appeal to the liquor control administrator, such appeal does not suspend the local board's order of revocation pending the appeal, unless the administrator shall so order. See G. L. 1938, chap. 164, §9, as amended by P. L. 1939, chap. 660, sec. 128. Thus by declining to accept a suspension and demanding a hearing, the licensee stakes his license on the outcome of the hearing. Surely a construction that leads to such a result cannot fairly be said to favor the licensee or to impede the due administration of the statute in "the promotion of temperance and for the reasonable control of the traffic in alcoholic beverages." G. L. 1938, chap. 175, §1.

Since, in the instant cause, the petitioners, with the exception of Alfred Burton, who, without objection, was granted leave to withdraw, have refused to accept suspension of their licenses and are insisting upon their rights to a hearing, in accordance with law; and since respondents expressly admit

that the proceeding of February 26, 1947 was not such a hearing, we must hold that each order suspending the license of each petitioner for sixteen days, to take effect March 1, 1947, at 1 a. m., is illegal.

The prayer of the petition is granted and each of such orders is quashed.

*Michael DeCiantis, Harry F. McKanna, Charles J. Bourgault,* for petitioners.

*Edward Winsor, Charles P. Williamson, Edwards & Angell,* for respondents.