Joseph Cesaroni *vs.* Nathaniel W. Smith, Jr.,
*Liquor Control Administrator.*

JULY 6, 1964.

Present: Condon, C.J., Roberts, Powers and Joslin, JJ.

ROBERTS, J. This petition for certiorari was brought to review a decision of the state liquor control administrator suspending the petitioner's license for the sale of alcoholic beverages in an establishment located in the city of Woonsocket. The writ issued, and pursuant thereto the respondent has certified to this court the record of the proceedings in the cause. The order of suspension was stayed by this court until the return day of the writ on condition that the petitioner show cause at that time why the stay should continue. For cause shown the stay was continued in effect until further order of the court.

The petitioner, it appears, operates an establishment known as the Holiday Inn under a retailer's class B license issued by the board of license commissioners of that city. The record discloses that on December 27, 1963 petitioner was notified in writing by the city clerk of the pendency of a hearing on a complaint charging him with "violating Title 3 Chapter 5 Section 23 of the General Laws of Rhode Island 1956, in that on November 29, 1963 you or your agents allowed licensed premises to become disorderly." After hearing, the board of license commissioners, hereinafter referred to as the local board, suspended the license for a period of six months. From this decision petitioner

appealed to the liquor control administrator pursuant to §3-7-21.

The appeal was heard de novo by the administrator who, dismissing as lacking in merit contentions of petitioner alleging want of jurisdiction in the local board, found on the evidence adduced before him that the alleged violation had been proved. Thereupon he denied and dismissed the appeal, affirmed the suspension order of the local board, and, noting that such order had been in effect up to the hearing on the appeal, ordered that it continue in effect until July 18, 1964, the date upon which the period of suspension ordered by the local board would terminate. From this decision petitioner brought the instant petition for certiorari.

In this court petitioner urges that the administrator erred in refusing to dismiss the charges, contending that the local board exceeded its jurisdiction in acting on them, first, because it does not appear that the cause was instituted by the formal sworn complaint alleging such violation and, second, because it does not appear that the city council heard and determined the charges acting in its administrative capacity as a local licensing authority as provided in §3-5-15. These contentions go to the jurisdiction of the local board, a matter which is not brought before this court for review by certiorari. Certiorari brings here for review only errors of law that appear in the record of the hearing and decision of the administrator, and want of jurisdiction in a local board to so act is without effect on the jurisdiction of the administrator conferred by §3-7-21.

In *Hallene* v. *Smith*, 98 R. I. 360, 201 A.2d 921, this court held that §3-7-21 contemplates the removal of a cause by operation of law from a local board to the administrator. Under such removal his jurisdiction is de novo, pursuant to which he independently exercises the licensing function. We held in *Hallene* that the legislative intent was to establish a state licensing authority with power to

hear such causes de novo unaffected by any error inhering in the exercise of the licensing function by a local board acting within its territorial jurisdiction.

This concept of judicial review of administrative action by way of certiorari has been given clear expression in *Marshall* v. *Registrar of Motor Vehicles,* 324 Mass. 468, where the court said at page 469: "The only respondent in a petition for a writ of certiorari is the tribunal, the validity of the action of which is challenged and in the possession of which are the records that are to be certified and examined to determine whether they disclose any errors of law. Where, as here, it is alleged that an appeal was taken from the administrative action of an officer to another officer or board, it is the record of the latter that is to be certified, as the decision on appeal supersedes the first decision * * * and constitutes the final action of the administrative agency which alone is subject to judicial review." It is our conclusion then that the contentions of petitioner challenging the jurisdiction of the local board are without materiality in the instant proceedings for review of the administrator's decision by certiorari.

We turn then to petitioner's contention that he has not been shown to have permitted the licensed premises to become disorderly in violation of §3-5-23, the pertinent provisions of which read: "If any licensed person shall permit the house or place where he is licensed to sell beverages under the provisions of this title to become disorderly so as to annoy and disturb the persons inhabiting or residing in the neighborhood thereof, * * * and if it shall be made to appear to the satisfaction of the board, body or official hearing such charges that he has * * * permitted to be done any of the things hereinbefore in this section mentioned, then said board, body or official may suspend or revoke his license or enter other order thereon." The precise contention of petitioner, as we understand him, is that while he is charged with permitting the licensed premises to become

disorderly, it is not shown that such conduct in the premises, if disorderly, annoyed or disturbed persons who reside in the neighborhood, and therefore a violation of the statutory provisions set out above has not been shown.

We first reject petitioner's assumption that the instant cause is a criminal proceeding in which he is charged with an offense to which he refers as disorderly conduct. Nothing in the record warrants this assumption. On the contrary, it discloses clearly that he has been charged with a violation of a specific regulatory provision set out in the statute by way of a proceeding in rem against the license issued to him. In exercising control over the liquor traffic, the legislature has delegated to the administrator the administration of its regulatory power as well as having made particular conduct proscribed in the statute criminal. The twofold thrust of the control apparatus thus set up by the legislature was recognized in *Di Traglia* v. *Daneker,* 83 R. I. 227, as contemplating regulation either by administrative action or by criminal prosecution or by both such procedures. It is clear that the instant action is administrative in its nature and is directed against the license issued to petitioner.

That being so, it is our opinion that petitioner had notice sufficient to inform him of the nature of the statutory regulation, the violation of which he is charged. He is informed therein that he had permitted the licensed premises to become disorderly in violation of §3-5-23. In a criminal case this reference to the pertinent statutory provision has been held sufficient to satisfy the constitutional requirement for hearing and notice. General laws 1956, §12-12-6 (b), specifically provides that such reference shall render notice adequate. In *Nocera Bros. Liquor Mart Inc.* v. *Liquor Control Hearing Board,* 84 R. I. 214, we made it clear that the notice required to prosecute violations of the liquor regulations need be no more specific than one required in a complaint charging a crime. It is then our opinion that peti-

tioner's· claim that he was not adequately informed as to the offense with which he was charged under the statute is without merit.

We turn then to petitioner's contentions that no violation has been shown of the pertinent provision of §3-5-23. There is in the record evidence, substantially undisputed, concerning the conduct of patrons of petitioner's establishment, both inside and outside the premises. A field investigator employed by the liquor control administration, testified that while in the premises on November 29, 1963 he observed "boys dancing with boys, kissing, embracing; girls dancing with girls, kissing and embracing." He testified that he had observed similar conduct in the premises on October 11, 1963. Other witnesses who reside in the immediate vicinity of the licensed premises testified that at and after the closing hour on Friday and Saturday nights patrons leave the premises and gather in the street, brawling and quarreling among themselves and using bad language. One witness testified that some of the males engaged in hugging and kissing other males in the street, while some of the females quarreled about matters which would not be good for children to hear and that on a Sunday morning following such an occasion she saw feminine garments lying about the street.

The petitioner contends there is no evidence in the record that will support the finding that he permitted the conduct alleged to have made the licensed premises disorderly within the meaning of the statute. He argues that in this particular the statute requires a showing of an affirmative grant of permission to his patrons to engage in such conduct and that to hold permission is to be found in mere acquiescence therein is to make him "an insurer of his patrons' sexual tastes." The short answer to this contention is that the legislature, in enacting the pertinent provision of the statute, intended to impose upon such licensee the obligation to maintain an efficient and affirmative supervision over the

conduct of his patrons in his place to such an extent as is necessary to maintain order therein. It is our opinion that as a practical matter a licensee assumes an obligation to affirmatively supervise the conduct of his patrons so as to preclude the generation therefrom of conditions in the neighborhood of like character to conditions that would result from maintenance of a nuisance therein.

It is to be conceded that this imposes upon a licensee an onerous burden in the management of the licensed premises. It is, however, within the authority of the legislature, the liquor traffic being peculiarly within the police power of the state. In *Di Traglia* v. *Daneker, supra,* this court said at page 230: "The public has a vital and continuing interest in the control and supervision of the liquor traffic. Therefore the business of selling beverages, if permitted at all, is clearly and completely subject to the police power of the state in order that the health, morals and safety of the people generally may be protected against the evils of intemperance. In the exercise of that power the state may impose restrictions and burdens, however great, which the legislature may deem advisable to prescribe, so long as such provisions are not discriminatory or inconsistent with federal or state constitutional requirements." It is our opinion then that the responsibility of a licensee for the conduct of his patrons within the licensed premises that makes it disorderly within the meaning of the statute is established by evidence showing a toleration or acquiescence in such conduct by the licensee.

The petitioner further contends that the conduct of his patrons did not amount to disorderly conduct such as would render his premises "disorderly" within the contemplation of the statute and that, if it did, there is no evidence in the record that such conduct within the premises annoyed or disturbed those living in the neighborhood. As we have noted, the statute, in our opinion, does not require a showing of conduct in the premises constituting a criminal of-

fense designated as disorderly conduct. The word "disorderly" as used here contemplates conduct within premises where liquor is dispensed under a license that causes either directly or indirectly conditions in the neighborhood in annoyance of or disturbing to the residents thereof. The petitioner argues, as we understand him, that the statute, when read literally, by its very terms requires that it be applied strictly. With this we do not agree. It is our opinion that the legislature, in enacting this statute, intended to condition the continued operation of establishments under these licenses on the ability of the licensee to prevent the occurrence of conditions therein which either act directly on the sensibilities of the neighbors or which, by giving rise to conduct outside the premises, by indirection offend the sensibilities of the neighbors.

The evidence here is, in our opinion, clearly susceptible of reasonable inferences that petitioner's establishment was disorderly within the meaning of the statute, from which conditions developed outside of the premises that disturbed and offended residents in the neighborhood. The administrator was warranted in finding that this licensee by his acquiescence in the conduct of his patrons permitted the licensed premises to become attractive as a gathering place for deviates of both sexes, a virtual house of assignation for perverts. This obviously induced these unfortunate people to flock to a place where they would be assured that their conduct would be tolerated and where any residual reluctance at participation in acts of perversion would be overcome by the availability of alcoholic beverages supplied them at a price by the licensee. It is clear that the association of such people in the circumstances set the stage for overt acts that resulted in the brawling, quarreling, and uninhibited satisfying of aberrant sexual desires that the evidence discloses in this case offended and disturbed normal people residing in the neighborhood. This, in our

opinion, is the very type of conduct the legislature intended to proscribe.

We perceive no merit in petitioner's charge that the administrator erred in admitting into evidence testimony as to disorderly conditions in the premises other than on the night of November 29 or as to conduct annoying the neighbors other than on that night. The legislature, in enacting this statute, was providing for the regulation of the liquor traffic by imposing on licensees a comprehensive obligation to operate the licensed premises so as to prevent the development therein of conditions tending to disturb and annoy those who live in the neighborhood. We cannot agree that in so doing it contemplated circumscribing the exercise of the control over licensees it had thus delegated to the administrator by requiring compliance on his part with technical rules of evidence or pleading in determining whether a licensee has complied with the regulations it promulgated and requires the administrator to enforce.

We are constrained then to conclude that the administrator found by way of reasonable inference from the evidence adduced before him that the petitioner did permit the licensed premises to become disorderly so as to annoy and disturb residents of the neighborhood. In short, we find that the administrator did not misconceive the law concerning the conduct proscribed by the pertinent provisions of §3-5-23 and that the findings he made in this cause are supported by legal evidence in the record.

The petition for certiorari is denied and dismissed, the pending stay of the order of suspension is dissolved, the writ heretofore issued is quashed, and the record certified to this court is ordered returned to the respondent administrator with direction to reinstate the order of suspension.

JOSLIN, J., dissenting. The suspension order is based on the administrator's finding that petitioner violated G. L. 1956, §3-5-23, which in pertinent part provides that a license may be suspended if the licensee permits his place of busi-

ness "to become disorderly *so as* to annoy and disturb the persons inhabiting or residing in the neighborhood thereof * * *." (italics mine) The offense is alleged to have taken place on November 29, 1963.

The record discloses that petitioner allowed his premises to become disorderly on November 29, 1963, but there is no evidence that such conduct annoyed or disturbed his neighbors. It also contains testimony that on various occasions prior to November 29 patrons of petitioner immediately after leaving his place of business and while still in the vicinity thereof were disorderly, thereby causing annoyance and disturbance to those in the neighborhood.

If the majority finds that the disorderly conduct of November 29 coupled with the antecedent annoyance and disturbance of the neighbors constituted guilt of the offense charged within the legislative contemplation, then, with all respect for its opinion, I believe it disregards what is clear and unambiguous and rewrites the statute to make it conform to an intention in nowise apparent from its language. The statute admits of no reasonable interpretation which warrants a finding of guilt of the offense charged unless the disorderly conduct resulted in annoyance and disturbance of the neighbors. The words of the statute "so as" have a meaning. They clearly import that there are two elements to the offense which are dependent on each other and that unless the annoyance and disturbance are a consequence of and result from the disorderly conduct there is no violation.

On the other hand the conclusion of guilt may be premised on the testimony that there was disorderly conduct prior to November 29 which disturbed and annoyed neighbors. The majority says petitioner by insisting on the inadmissibility of evidence of events which occurred other than on November 29 unduly relies on technical rules of pleading and evidence. With all due deference, this is not a question of calling into play technical rules, but is rather a

question of the application of one of those fundamental principles which we have frequently said are binding on tribunals which act quasi-judicially. *Morgan* v. *Thomas,* 98 R. I. 204, 200 A.2d 696; *McCarthy* v. *Board of Aldermen,* 38 R. I. 385. The liquor control administrator at hearings on suspensions of licenses acts in such a capacity, *Burton* v. *Lefebvre,* 72 R. I. 478, *Clark* v. *Alcoholic Beverage Comm'n,* 54 R. I. 126, and should apply the fundamental principle that testimony not conformable to the allegations is inadmissible. *Leister* v. *State Alcoholic Beverage Control Board,* 292 Ky. 705. If he had so acted there would have been nothing upon which to predicate a finding of guilt of the offense charged.

For these reasons I cannot agree with the majority, but such disagreement goes only to the narrow issue herein discussed.

*Grande & Grande, Aram K. Berberian,* for petitioner.

*J. Joseph Nugent,* Attorney General, *Joseph L. Breen,* Chief Special Counsel, for respondent.